**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Lori A. K.,<br><br>                    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br><br>                    Defendant. | Civil No. 3:22-CV-00118-TOF<br><br><br><br>March 23, 2023 |

**<u>RULING ON PENDING MOTIONS</u>**

The Plaintiff, Lori A. K.,[1] appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting her application for Disability Insurance ("DI") benefits under Title II of the Social Security Act.  (Compl., ECF No. 1.)[2]  She has moved for an order "reversing the decision of the Commissioner . . . , seeking a reversal of the Administrative Law Judge's decision denying [her] application for Social Security Disability benefits and a remand of the case for further proceedings."  (ECF No. 17.)  The Commissioner has moved for an order affirming the decision.  (ECF No. 19.)

The Plaintiff makes four principal arguments for reversal or remand, the first three of which are united by a common theme.  First, she contends that the Administrative Law Judge ("ALJ")

---

[1]     Pursuant to the Court's January 8, 2021 Standing Order, the Plaintiff will be identified solely by first name and last initial, or as "the Plaintiff" throughout this opinion.  *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan. 8, 2021).

[2]     When she requested a hearing before the Administrative Law Judge ("ALJ"), the Plaintiff also appealed the established onset date of June 7, 2019 for her Supplemental Security Income ("SSI") benefits under Title XVI that the Social Security Administration ("SSA") awarded to her upon reconsideration of such application.  (R. 10, 258, 296; Pl.'s Mem., ECF No. 17-1, at 2.) Where relevant, therefore, the Court will reference both the regulations for DI benefits (20 C.F.R. Ch. III, P. 404) and SSI benefits (20 CFR Ch. III, P. 416).

failed to properly apply the treating physician rule. (*See* ECF No. 17-1, at 1, 3-9.) Specifically, the Plaintiff argues that the ALJ "unreasonably limit[ed] her consideration of [treating pulmonologist Erica Herzog, M.D.'s] opinion as to lung function only, and this significantly affected the outcome of her decision." (*Id.* at 4-5.) Second, she claims that "[i]n a similar fashion, the ALJ misapplied the law in assessing the opinion of the plaintiff's treating therapist, Hassan Stavis[.]" (*Id.* at 7-8.) Third, she alleges that in weighing the opinion evidence, the ALJ improperly assigned "substantial weight" to the state agency consultant opinions. (*Id.* at 9.) All three of these arguments are attacks on the ALJ's treatment of the opinion evidence. And fourth, she argues that the ALJ's RFC determination "was not supported by substantial evidence." (*Id.* at 9-12.) The Commissioner responds that the ALJ properly considered and weighed the medical opinion evidence, and that the decision was supported by substantial evidence. (ECF No. 19-1, at 3-15.)

Having carefully considered the parties' submissions, and having carefully reviewed the entire, 4,150-page administrative record, the Court concludes that the ALJ committed no reversible legal error and that her decisions were supported by substantial evidence. Accordingly, the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 17) is **DENIED**; the Commissioner's Motion for an Order to Affirm the Decision (ECF No. 19) is **GRANTED**; and judgment will be entered in the Commissioner's favor.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On February 27, 2018, the Plaintiff filed an application for Title II DI benefits. (R. 10, 403-09.) She claimed she could not work because of the following illnesses, injuries, or conditions: rheumier arthritis, polychondritis, sarcoidosis (pulmonary, arthritic), osteoarthritis, major depression disorder/unipolar, post-traumatic stress disorder ("PTSD"), panic attacks,

synovitis of ankle, arthritis in neck, degeneration of neck, osteochondral lesion (left talar dome), osteochondral lesion (right talar dome), spondylosis of lumbosacral region, chronic pain, and fibromyalgia.  (R. 163, 178.)  On April 5, 2018, she also filed an application SSI benefits under Title XVI.  (R. 10, 410-18.)  In both applications, she alleged a disability onset date of January 31, 2014.  (R. 10, 410.)

On October 2, 2018, the SSA found that the Plaintiff was "not disabled."  (R. 10, 203-04.) On reconsideration of her SSI claim, the SSA found her disabled as of June 7, 2019.  (R. 10, 258.) But the SSA again denied her DI claim on reconsideration on June 7, 2019.  (R. 10, 257.)  The Plaintiff then requested a hearing before an ALJ to appeal the denial of the Title II DI benefits claim and the established disability onset date of June 7, 2019 in the Title XVI SII application, and on March 25, 2020, Judge I. K. Harrington held a hearing.  (R. 10, 73-128, 296.)  The Plaintiff's counsel, Gary Huebner, appeared on her behalf.  (R. 73.)  The ALJ also heard testimony from a vocational expert, ("VE"), Renee Moore.  (R. 103-120.)

The ALJ then kept the record open for three weeks "for the exhibition of prior medical records and a [post hearing] brief from the claimant's counsel addressing the issue of administrative res judicata."  (R. 10.)  Following the submission of post hearing briefs and records, including a post hearing response to a vocational interrogatory, the Plaintiff requested a supplemental hearing. (R. 10, 48-49, 614-16.)  On March 31, 2021, the ALJ held the supplemental hearing.  (R. 44-72.) Attorney Huebner appeared on her behalf.  (R. 44.)  Due to an illness of VE Moore, the ALJ heard testimony from VE Yaakov Taitz.  (R. 49, 63-70.)  The ALJ advised that the response to vocational interrogatories and prior testimony of VE Moore would be rejected because she could not be cross-

examined by counsel, and the Plaintiff's counsel agreed to same and the appearance of VE Taitz. (R. 11 n.1.)

On April 14, 2021, the ALJ issued an unfavorable decision. (R. 7-38.) As will be discussed below, ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims (*see* discussion, Section II *infra*), and ALJ Harrington's written decision followed that format. At Step One of her analysis, she found that the Plaintiff had not engaged in substantial gainful activity since her application date of January 31, 2014. (R. 13.) At Step Two, she found that the Plaintiff suffers from the severe impairments of fibromyalgia, degenerative disc disease of the cervical and lumbar spine, osteoarthritis status post ankle debridement, depressive disorder, anxiety disorder, and PTSD. (R. 14.) At Step Three, she concluded that the Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) She then determined that, notwithstanding her impairments, for the period of January 31, 2014 through June 6, 2019, the Plaintiff retained the residual functional capacity to:

> [P]erform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) except that she is limited to: lifting and carrying up to 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours out of 8 hours, standing and/or walking for 4 hours out of 8 hours; occasional climbing of ramps, stairs, ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to fumes, dust, gases, odors, and poor ventilation. The claimant is further limited to simple and routine tasks involving no more than simple, short instructions and simple work-related decisions, with few workplaces changes in a non-public work setting with only occasional interaction with coworkers and supervisors.

(R. 17.) At Step Four, the ALJ found that the Plaintiff was unable to perform her past relevant work as a phlebotomist. (R. 24.) At Step Five, she relied on VE Taitz's testimony to conclude that there are a significant number of jobs in the national economy that the Plaintiff could perform, such as mail clerk, price marker, and routing clerk. (R. 25-26, 67.) In summary, she found that

the Plaintiff had not been under a disability, as defined in the Social Security Act, from the alleged

onset date of January 31, 2014, through June 6, 2019.  (R. 26.)

On June 18, 2021, the Plaintiff requested that the Appeals Council review the ALJ's

decision.  (R. 401-02.)  On November 23, 2021, the Council found "no reason under our rules to

review the [ALJ's] decision" and, therefore, denied the Plaintiff's request for review.  (R. 1.)  It

added that if the Plaintiff wished to contest it, she could "ask for court review . . . by filing a civil

action."  (R. 2.)

The Plaintiff then filed this action on January 21, 2022.  (Compl., ECF No. 1.)  The

Commissioner answered the complaint by filing the administrative record on March 22, 2022.

(ECF No. 10; *see also* D. Conn. Standing Scheduling Order for Social Security Cases, ECF No. 4,

at 2 stating that the Commissioner's filing of the administrative record is "deemed an Answer

(general denial) to Plaintiff's Complaint").)  On June 22, 2022, the Plaintiff filed her motion for an

order reversing or remanding the Commissioner's decision.  (ECF No. 17.)  On August 22, 2022,

the Commissioner filed a motion for an order affirming that decision.  (ECF No. 19.)  The Plaintiff

did not file a reply brief.  The parties' motions are therefore ripe for decision.

## II.   APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an

'inability to do any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than [twelve] months.'"  *Smith v. Berryhill*, 740

F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)); *see also* 20

C.F.R. § 416.905(a).  To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ."  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).  At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ."  *Id.*  At Step Three, the ALJ then evaluates whether the claimant's disability "meets or equals the severity" of one of the "Listings" – that is, the specified impairments listed in the regulations.  *Id.*  At Step Four, the ALJ uses a residual functional capacity ("RFC") assessment to determine whether the claimant can perform any of her "past relevant work."  *Id*.  At Step Five, the ALJ addresses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience."  *Id.*  The claimant bears the burden of proving her case at Steps One through Four.  *Id.*  At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

In reviewing a final decision of the Commissioner, this Court "perform[s] an appellate function."  *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).  Its role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error.  "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error."  *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted).

A disability determination is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . .") (citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (quotation marks and citations omitted).   When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment.   "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

An ALJ does not receive the same deference if he has made a material legal error.  In other words, district courts do not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted).  "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## III.   DISCUSSION

The Plaintiff makes four principal arguments, the first three of which are united by a common theme.  She first argues that the ALJ failed to properly apply the treating physician rule pursuant to 20 C.F.R. § 404.1527(c), specifically with respect to the ALJ's analysis of certain medical and consultative opinions.  (ECF No. 17-1, at 3-9.)  She contends that the ALJ

"unreasonably limit[ed] her consideration of [treating pulmonologist Dr. Herzog's] opinion as to lung function only, and this significantly affected the outcome of her decision."  (*Id.* at 4-5.)  Second, she claims that "[i]n a similar fashion, the ALJ misapplied the law in assessing the opinion of the plaintiff's treating therapist, Hassan Stavis[.]"  (*Id.* at 7-8.)  Third, she alleges that in weighing the opinion evidence, the ALJ improperly assigned "substantial weight" to the state agency consultant opinions.  (*Id.* at 9.)  All three of these arguments are attacks on the ALJ's treatment of the opinion evidence.  And fourth, she argues that the ALJ's RFC determination "was not supported by substantial evidence."  (*Id.* at 9-12.)  For the following reasons, the Court concludes that the ALJ's decision contained no legal error and was supported by substantial evidence in the record.

### A.   The ALJ Did Not Commit Reversible Error in Her Handling of the Opinion Evidence

The Plaintiff argues that the ALJ committed reversible error in her handling of the opinion evidence.  Specifically, she argues that the ALJ erred in her weighing of Dr. Herzog's, Mr. Stavis's, and the state agency consultants' opinions.  (ECF No. 17-1, at 3-9.)  I will discuss the ALJ's evaluation of each of these providers next, and for the reasons that follow, I conclude that the ALJ did not commit reversible error in her handling of the opinion evidence.

#### i.   Dr. Herzog's Treatment Records

Dr. Herzog is the Plaintiff's treating pulmonologist at Yale Winchester Chest Center who treated her for sarcoidosis.  (R. 22, 2742-46, 1244-52, 1899-1971.)  On March 10, 2020, she completed a pulmonary medical source statement that she received from the Plaintiff's counsel.  (R. 2742-46.)  In her statement responses, she opined that as of June 30, 2016, the Plaintiff could not walk more than half of one city block "due to leg pain[,]" could not sit or stand for more than forty-five minutes at one time without needing to get up or sit down, was only able to stand/walk

for less than two hours in an eight-hour working day, was only able to sit for about four hours of an eight-hour working day, would require frequent unscheduled breaks, was limited to occasionally carrying ten pounds in a competitive work situation, and was expected to be "off task" more than twenty-five percent of a typical work day.  (R. 2744-45.)  She concluded that the Plaintiff's "lung function is normal[,]" but that she "has pain from systemic conditions that contribute to her inability to work."  (R. 2746.)

The ALJ assigned little weight to Dr. Herzog's opinions.  (R. 22.)  She understood Dr. Herzog's statement responses as saying that the Plaintiff's limitations came not from "lung function" but rather from "pain from systemic conditions."  (*Id.* (citing R. 2746).)  She further found that "the [March 2020] assessment is internally inconsistent and is not based on Dr. Herzog's treatment notes."  (R. 22.)  She summarized that Dr. Herzog's treatment notes as "consistently report[ing] predominantly intact physical examination findings, documenting good musculoskeletal strength in all extremities and normal gait with no focal deficits, contrasting [sic] the severe physical limitations in the assessment."  (*Id.* (citing R. 1247, 1250, 1912, 1928, 1944, 1958).)  She "highlight[ed] that Dr. Herzog is a treating pulmonologist for Von Williebrand's disease[,]" which she found to be a non-severe impairment.  (*Id.*)

The Plaintiff contends that "the ALJ's analysis of [Dr. Herzog's] opinion failed to meet the requisite legal standard for assessing treating source opinions."  (Pl.'s Mem., ECF No. 17-1, at 4.)  Specifically, she alleges that the ALJ's decision reflects "a fundamental misunderstanding of the nature of sarcoidosis as it affects the [P]laintiff's functioning[,]" as "the ALJ erroneously restricted her evaluation of this condition to 'sarcoidosis of the lung.'"  (*Id.* at 5 (citing R. 14).)  Moreover, she claims that the ALJ failed to correctly identify Dr. Herzog's specialty and erroneously identified her as "a treating pulmonologist for Von [Willebrand's] disease."  (*Id.*)   The

Commissioner responds that the ALJ properly considered and weighed Dr. Herzog's opinion. (Def.'s Mem., ECF No. 19-1, at 4.)

The "treating physician rule" applies to claims filed before March 27, 2017.  20 C.F.R. §§ 404.1527, 416.927.  On February 27, 2018, the Plaintiff filed an application for Title II DI benefits. (R. 10, 403-09.)  On April 5, 2018, she also filed an application for Supplemental Security Income ("SSI") benefits under Title XVI.  (R. 10, 410-18.)  In both applications, she alleged a disability onset date of January 31, 2014.  (R. 10, 410.)  The ALJ found there to be "good cause under the reopening provisions of 20 [C.F.R. §§] 404.988(b) and 404.989," and reopened the previous determination dated August 2, 2017.  (R. 10.)  Thus, the relevant period under review for Plaintiff's DI and SSI benefits runs from January 31, 2014, the date she applied for benefits in her initial application, through the date she was found disabled pursuant to her Title XVI application for SSI, June 6, 2019.  (*Id.*); *see also* 20 C.F.R. §§ 404.1527, 416.927.  Moreover, the Commissioner does not dispute that the pre-March, 2017 treating physician rule applies in this case.  (*See generally* Def.'s Mem., ECF No. 19-1.)

Under the treating physician rule, the ALJ must give the treating physician's opinion "controlling weight" when the opinion is supported by and consistent with the record.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  As stated in the Social Security Regulations, "[i]f we find that a treating source's medical opinion on the issue(s) of the nature and severity of [the plaintiff's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the plaintiff's] case record, we will give it controlling weight."  *Id*.  The "treating physician" or "treating source" must be an "acceptable medical source" that "provides [the plaintiff], or has provided [the plaintiff], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with

[the plaintiff.]" 20 C.F.R. §§ 404.1527(a)(1)-(2), 416.927(a)(1)-(2).  For claims filed before March 27, 2017, only licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are considered "acceptable medical sources."  20 C.F.R. §§ 404.1502(a), 416.902(a).

If the ALJ decides that a treating source's opinion is not entitled to controlling weight, she must then determine how much weight to give it.  When doing so, the ALJ ordinarily must explicitly consider several factors, known as the "*Burgess* factors," which are: "(1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist."  *Selian v. Astrue,* 708 F.3d 409, 418 (2d Cir. 2013) (per curiam) (citing *Burgess,* 537 F.3d at 129).  "At both steps, the ALJ must give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion."  *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation marks and alterations omitted) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)).  It is generally considered a "procedural error" when an ALJ fails to "explicitly apply the *Burgess* factors when assigning weight" to a treating physician's opinion.  *Estrella*, 925 F.3d at 96 (quotation marks omitted).  But when "a searching review of the record assures [the Court] that the substance of the treating physician rule was not traversed, [the Court] will affirm."  *Id.* (quotation marks omitted).

Because Dr. Herzog is a treating physician, the ALJ was ostensibly required to explicitly weigh the *Burgess* factors and provide "good reasons" for assigning less than controlling weight.  *Estrella*, 925 F.3d at 96.  In this case, the ALJ did not explicitly apply all the *Burgess* factors when assigning "partial weight" to Dr. Herzog's opinions.  While the ALJ did discuss the second and third factors (R. 22), she did not reference the length of the Plaintiff's treatment with Dr. Herzog

encompassed in the first factor.  (*See id.*)  And as to the fourth factor, the ALJ observed that "Dr. Herzog is a treating pulmonologist for Von Williebrand's disease, and as discussed above, is a nonsevere impairment."  (*Id.*)  The ALJ clearly understood throughout her opinion that Dr. Herzog, the Plaintiff's treating provider for sarcoidosis, is a pulmonologist who was opining about the pain management implications of sarcoidosis.  But her reference to "Von Williebrand's disease" arguably renders the record unclear as to whether she fully evaluated the impact of the doctor's specialty.  (*See id.*)  The Court concludes, however, that a "searching review" of the record shows that the ALJ did not traverse the substance of the treating physician rule.  (*Id.*)

Dr. Herzog's records simply do not paint a picture like the one she presented in her March 2020 medical assessment.  Those records show that the Plaintiff's musculoskeletal implications of her sarcoidosis were being managed effectively without limitations.  For example, on June 25, 2015, Dr. Herzog opined that she had good strength of upper and lower extremities bilaterally and that she had a normal gait.  (R. 1928.)  On July 2, 2016, Dr. Herzog wrote that she has "a pain management specialist who is treating her pain adequately[.]"  (R. 1957.)  A report from rheumatologist Harjinder Chowdhary, M.D., in Dr. Herzog's file dated August 20, 2016 observed that she "has been having some achiness in different joints of the body[,]" but made no mention of limitations other than aches.  (R. 1960.)  At a February 3, 2017 visit, Dr. Herzog opined that "[h]er pain is greatly improved[.]"  (R. 1246.)  Notably, there was no mention of any joint pain, complications, or limitations.  (*See* R. 1246-48.)  On March 13, 2017, she saw Kristin Papu, PA, at Dr. Herzog's office, who opined that she had "[g]ood strength of upper and lower extremities bilaterally" and a "[n]ormal gait[.]"  (R. 1250.)  And on July 13, 2018, Dr. Herzog noted that "Pt comes in today stating that she feels relatively well."  (R. 1566.)  She also reported that she had been unable to exercise due to a leg surgery and feels like her trachea spasms when she sneezes,

but "[o]therwise she is doing very well." (*Id.*)  There is simply nothing, anywhere, in any of Dr. Herzog's treatment records supporting the claimed limitations caused by pain from systemic conditions in the March 2020 assessment.

Further, the records also essentially show that the Plaintiff's lungs are well-functioning without the mention of any limitations.  For example, on February 20, 2015, treatment records show that her lungs were "CTAB," that is, "clear to auscultation bilaterally." (R. 1912.)  On June 26, 2015, Dr. Herzog opined that her lungs were clear and that she had normal spirometry and lung volumes.  (R. 1927, 1930 ("Given clinical stability and functional capacity there are no current indications for steroids or immunosuppressive medications at this time from a pulmonary standpoint").)  She also opined that "the workup has been negative[,]" and further noted that "fortunately [the Plaintiff's] lungs seem like they are doing OK." (R. 1937.)  On February 19, 2016, Dr. Herzog noted that "Pt states her lungs have been stable[.]" (R. 1943.)  On July 2, 2016, she observed that her lungs were CTAB (R. 1958), and that she has been "stable from a lung standpoint" and discontinued her oral steroids.  (R. 1959.)  Then, on February 3, 2017, Dr. Herzog opined that her "[l]ungs [were] CTAB no wheezing" (R. 1247), and that "[r]ecent wheezing and chest [symptoms] appear to have resolved with [antibiotics]." (R. 1248.)  Dr. Herzog did opine that she "[m]ay need to consider other causes of wheezing . . . if issue is ongoing[,]" but that they "di[d] not have recent [pulmonary function tests] as pt has canceled or missed several [appointments] so it is difficult to know her current pulmonary status." (*Id.*)  Dr. Herzog opined that the Plaintiffs "lungs seem ok right now." (R. 3398.)  On March 13, 2017, PA Papu observed that her lungs were CTAB, and her sarcoidosis was "without significant pulmonary involvement." (R. 1250.)  On July 13, 2018, Dr. Herzog opined that her lungs were CTAB (R. 1568), she had normal spirometry and lung volumes (R. 1569), she was "[d]oing very well from a pulmonary

perspective[]" (*id.*), and that "[h]er lung function is excellent." (*Id.*)  Overall, these pulmonary impressions of Dr. Herzog are, in fact, confirmed in her March 2020 assessment that her "lung function is normal." (R. 2746.)  And when compared to her unsupported depiction of the Plaintiff's musculoskeletal limitations, this only highlights and further confirms the ALJ's finding that "the [March 2020] assessment is internally inconsistent and is not based on Dr. Herzog's treatment notes." (*See* R. 22.)

The Plaintiff further alleges that the ALJ's decision reflects "a fundamental misunderstanding of the nature of sarcoidosis as it affects the [P]laintiff's functioning[,]" as "the ALJ erroneously restricted her evaluation of this condition to 'sarcoidosis of the lung.'" (Pl.'s Mem., ECF No. 17-1, at 5 (citing R. 14.).)  Based on the ALJ's analysis of Dr. Herzog's and the pulmonologists' records throughout her opinion, the Court disagrees.  First, the ALJ clearly understood that sarcoidosis affects more than the lungs.  The ALJ devotes several paragraphs of her decision to systemic and arthritic type pain (R. 19-20), which the record reflects are attributable to sarcoidosis flare ups.  (*See* R. 15 (noting that the Plaintiff was being evaluated for "sarcoidosis of the lung *with joint pain*[,]" showing the ALJ's awareness of the Plaintiff's *cardiac* sarcoidosis, and confirming her awareness of the Plaintiff's "ongoing multi-organ complaints and polyarthralgia") (emphasis added); R. 18 (stating that, after the Plaintiff was diagnosed with sarcoidosis, she "began suffering from chronic bronchitis, joint flare pain in her legs, knees, ankles, feet, spine, and neck, in addition to having frozen fingers"); R. 18 ("[T]he claimant testified that due to sarcoidosis and arthritis, she has very limited standing, walking, and sitting abilities, and is unable to stay in one position for a prolonged period"); R. 20 (discussing rheumatologist's evaluation of "joint pain throughout her body"); R. 22 (discussing Dr. Herzog's physical examination findings, including musculoskeletal strength, gait, etc.).)  As such, it is clear that the

ALJ did not "unreasonably limit[ed] her consideration of Dr. Herzog's opinion to lung functioning only" as the Plaintiff argues.  (*See* Pl.'s Mem., ECF No. 17-1, at 5.)

Though the ALJ did not explicitly address all the *Burgess* factors when reviewing Dr. Herzog's medical source opinions, a "searching review" of the record shows that her decision was supported by "good reasons" and that "the substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96; *see also Stonick v. Saul*, No. 3:19-cv-01334 (TOF), 2020 WL 6129339, at *6 (D. Conn. Oct. 19, 2020) (affirming the Commissioner's decision because the Court's "searching review" of the record revealed abundant objective medical evidence confirming that the claimant was not as limited as the treating physician's opinion claimed).  The ALJ clearly understood that sarcoidosis can affect more than the lungs.  In sum, the ALJ properly weighed Dr. Herzog's opinions and assigned less weight to those parts that were internally inconsistent with her own treatment notes and with substantial evidence in the record.

### ii.   Therapist Stavis's Treatment Records

The Plaintiff next contends that the ALJ misapplied the law in her treatment of Mr. Stavis's opinion.  (Pl.'s Mem., ECF No. 17-1, at 7-8.)  Mr. Stavis is the Plaintiff's treating therapist.  The record reflects that she saw him throughout 2013.  (R. 1489-1545.)  A March 2020 medical source opinion from Mr. Stavis assessed that she has "seriously limited to no useful functional ability in most areas of mental functioning."  (R. 23 (citing R. 2725-28).)  The ALJ gave no weight to the opinion, as Mr. Stavis "is not an acceptable medical source, and did not provide any explanation for the severe limitations."  (R. 23 (citing 20 C.F.R. §§ 404.1502, 416.927).)  She then gave "some weight" to an undated letter from Mr. Stavis for the notion that the Plaintiff "has some limits in interacting with the public and maintaining concentration."  (*Id.* (citing R. 2726).)  The Commissioner responds that the ALJ appropriately weighed Mr. Stavis's opinion, including her

discretion to "consider the degree to which a source presented relevant evidence in support of an opinion." (Def.'s Mem., ECF No. 19-1, at 8 (citing 20 C.F.R. § 404.1527(c)(3)).)

Under the then-current regulations, Mr. Stavis, a LMFT (licensed marriage and family therapist), was not an "acceptable medical source." *See* 20 C.F.R. §§ 404.1527, 416.927. At the time, "acceptable medical source[s]" included licensed or certified psychologists but did not include therapists such as LMFTs. 20 C.F.R. §§ 404.1513, 416.913; SSR 06-03P, 2006 WL 2329939, at *1-2. Only the opinions of acceptable medical sources are entitled to controlling weight. SSR 06-03P, 2006 WL 2329939, at *2; *see also* 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ should still give these opinions some consideration since they are "important and should be evaluated on key issues such as impairment severity and functional effects." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 103 (N.D.N.Y. 2011).

An ALJ need not explain her treatment of a non-acceptable medical source's opinion at the same level of detail as an acceptable medical source's opinion. While the ALJ has discretion in assigning weight to non-acceptable medical source opinions, she should provide an explanation for the weight that she assigns. In discussing opinions from non-acceptable medical sources, the ALJ's only obligation is to "explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, 2006 WL 2329939, at *6. *See also* 20 C.F.R. §§ 404.1527(f), 416.927(f); *Thomas v. Berryhill*, 337 F. Supp. 3d 235, 241 (W.D.N.Y. 2018) ("Although the ALJ is free to decide that the opinions of 'other sources' ... are entitled to no weight or little weight, those decisions should be explained and be based on all the evidence before the ALJ." (internal quotation marks omitted)).

When discussing opinion evidence from "other sources" including non-acceptable medical sources, ALJs may analyze the same six factors as when they evaluate opinion evidence from acceptable medical sources.  SSR 06-03P, 2006 WL 2329939, at *4.  These factors include: (1) the "examining relationship"; (2) the "treatment relationship," including the "length of the treatment relationship and the frequency of examination" and the "nature and extent of the treatment relationship"; (3) the "supportability" of the medical opinion; (4) the consistency of the medical opinion "with the record as a whole"; (5) the specialization of the source; and (6) "any factors [the claimant] or others bring to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the medical opinion."  20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6).  The ALJ is not required to make a "slavish recitation" of all of these factors "where the ALJ's reasoning and adherence to the regulation are clear."  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) (citing *Halloran,* 362 F.3d at 31-32).

The question, therefore, is whether the ALJ's discussion of the weight assigned to Mr. Stavis's opinions "allows" the Plaintiff or the Court "to follow her reasoning," and otherwise complies with 20 C.F.R. §§ 404.1527(f), 416.927(f).  *See Grisel A. v. Kijakazi*, No. 3:20-cv-719 (TOF), 2021 WL 4350565, at *5 (D. Conn. Sept. 24, 2021) (finding that the ALJ did not traverse the pre-2017 treating physician rule when the ALJ's discussion of the non-acceptable medical source allowed a claimant and subsequent reviewer to follow his reasoning).  The Court concludes that it does.

To begin with, the ALJ immediately acknowledged Mr. Stavis as an LMFT specialist who gave a March 2020 "mental" medical source opinion.  (R. 23.)  The ALJ also recognized the length of the treating relationship.  She discussed a July 2018 letter from Mr. Stavis that indicated that the Plaintiff "has been engaged with treatment since February 2015 at HealThy Soul Clinical

17

Services for anxiety, depression, and PTSD experiences." (*Id.* (citing R. 1439).) She evaluated the March 2020 mental medical source opinion and compared it to 2013 treatment notes, which she thought "relayed monthly visits and consistently noted within normal limits in all mental status findings, including mood, affect, thought process, and orientation." (*Id.*) She lastly explained that she gave "some weight" to the undated letter from Mr. Stavis for the notion that the Plaintiff "has some limits in interacting with the public and maintaining concentration." (*Id.* (citing R. 2726).) To the extent that the Plaintiff claims that the ALJ had to do more, i.e., discuss "the length of the treatment relationship and frequency of therapy sessions with Mr. Stavis (Pl.'s Mem., ECF No. 17-1, at 8), she is incorrect. The Plaintiff may disagree with these conclusions, but she cannot plausibly charge the ALJ with the legal error of not sufficiently explaining herself. The Court concludes that, in explaining her reasons for assigning some weight to the undated letter and no weight to the overall opinion of Mr. Stavis, the ALJ complied with her obligations under 20 C.F.R. §§ 404.1527(f) and 416.927(f). As such, there was no reversible error with respect to the ALJ's treatment of Mr. Stavis's opinion.

### iii.    Reliance on State Agency Consultants

The Plaintiff assails the ALJ's substantial reliance on the state agency consultants' reports. (Pl.'s Mem., ECF No. 17-1, at 8 (citing R. 24, 162-76, 234-56).) Specifically, she argues that "there are no treatment notes from these record reviewing consultants, because they did not personally evaluate the plaintiff." (*Id.*) The Commissioner counters that her contention "is without merit and cannot support remand." (Def.'s Mem., ECF No. 19-1, at 7.)

The ALJ analyzed the assessments of the prior state agency reviewers at the initial and reconsideration levels. (R. 23-24.) State agency medical consultants Lisa Anderson, M.D., and Maria Lorenzo, M.D., in October 2018 and May 2019, respectively, reviewed the record for the

Plaintiff's Title XVI claim and opined that the Plaintiff could perform "light exertion work with the use of a cane, and further limited to simple work with additional mental limitations in concentration and social interactions."  (R. 23; *see* R. 194-98, 219-23, 225-28).)  Dr. Anderson considered her sarcoidosis "from the pulmonary perspective" and found it to be stable.  (R. 197.)  Then, state agency psychological consultants Susan Uber, Ph.D., and Janine Swanson, Psy.D., reviewed the record for her Title XVI claim in September 2018 and February 2019, respectively, and opined that she could "perform a range of work involving simple directives of two to three steps and limited social interaction."  (R. 23; *see* R. 189-93, 198-200, 223-25, 228-30).)  Dr. Uber pointed to her ADLs of June 2018 where she stated her arthritis is worsening, she had difficulty with hands and breathing, and she used a cane during arthritis and sarcoidosis flareups.  (R. 190.)  The ALJ credited the expertise of these consultants and stated that "[a]lthough [they] did not have the opportunity to examine or treat the claimant, the reports reflect[] a thorough review of the available records."  (R. 24.)  However, the ALJ "deviate[d] from the assessments, noting that ongoing need for use of an ambulatory devise, such as a cane, is not consistently supported by the record until after the date last insured."  (*Id.*)  The ALJ cited to the Plaintiff's own reports that "she used a cane during 2017 and 2018 primary care appointments[,]" but "by April 2019, prior to the established onset date, she reported that she had stopped using a cane[.]"  (*Id.* (citing R. 1149, 1174, 2638).)

To the extent that the Plaintiff's argument is a blanket attack on the use of non-examining state agency consultants, it contradicts established law.  "It is well-settled that a consulting physician's opinion can constitute substantial evidence supporting an ALJ's conclusions."  *Suarez v. Colvin*, 102 F. Supp. 3d 552, 577 (S.D.N.Y. 2015) (collecting cases); *see also Rosier v. Colvin*, 586 F. App'x. 756, 758 (2d Cir. 2014) (summary order) (substantial evidence supporting ALJ's

conclusion that a treating physician's opinion should not be given controlling weight included evaluations by a consultative examiner).  Of course, "[c]ourts in this Circuit long have casted doubt on assigning significant weight to the opinions of consultative examiners when those opinions are based solely on a review of the record." *Soto v. Comm'r of Soc. Sec.*, No. 19-cv-4631 (PKC), 2020 WL 5820566, at *7 (E.D.N.Y. Sept. 30, 2020).  But if the opinions have proper support in the record, "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." *Wilson v. Saul*, No. 3:18-cv-01097 (WWE), 2019 WL 2603221, at *11 (D. Conn. June 25, 2019).

The Plaintiff also argues that the ALJ erred in relying on the consultants' reviews that were performed under the post-March 27, 2017 rules (Pl.'s Mem., ECF No. 17-1, at 8 (citing R. 24, 162-76, 234-56)), which the ALJ later deemed to be inapplicable to her claim.  However, the Plaintiff does not explain how the result would have come out differently.  The ALJ's cited portions of the consultants' opinions do not appear to have been dependent on new rules.  (*See* R. 23-24.)  As the Commissioner points out, "[o]nce the ALJ reopened Plaintiff's Title II claim . . . she properly evaluated the entire record concerning the relevant period beginning January 31, 2014[.]"  (Def.'s Mem., ECF No. 19-1, at 10 (citing R. 17-21).)  And the Plaintiff concedes that "[a]lthough the regulation was misapplied, the ALJ did cite the regulation that applied to her evaluation of treating source opinions for claims filed prior to March 27, 2017[.]"  (Pl.'s Mem., ECF No. 17-1, at 8 (citing R. 22; 20 C.F.R. § 404.1527).)  Accordingly, there was no reversible error with respect to the ALJ's treatment of the state agency consultants' opinions.

**B.**     **The ALJ 's Residual Functional Capacity Finding is Supported by Substantial Evidence**

Lastly, the Plaintiff argues that the ALJ's RFC determination "was not supported by substantial evidence." (Pl.'s Mem., ECF No. 17-1, at 9-12.)  Specifically, she argues that she "submitted substantial evidence to establish that she could not have sustained full time employment over the relevant period." (*Id.* at 12.)  The Commissioner replies that the Plaintiff's contention cannot support remand because it "reflects a misunderstanding of the standard of review" and is not supported by any cited evidence "to establish that her appointments could not have been scheduled around a full-time work schedule." (Def.'s Mem., ECF No. 19-1, at 14 (citations omitted).)

On appeal, the question is not whether there was substantial evidence *for* disability; it is whether the ALJ's finding of *no* disability had substantial evidentiary support.  This means that "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008); *see generally Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder.") (citation omitted).

Here, the Plaintiff argues that various treatment records and the VE's testimony support her contention that she could not have sustained full time employment over the relevant period.  For example, she pointed to multiple days of medical appointments and treatments that resulted in absenteeism from full time work throughout the relevant period.  (*See* Pl.'s Mem., ECF No. 17-1, at 10-11 ("[Plaintiff] received two days of inpatient treatment in late January 2014[.]" (citing R. 3222-23); "There was a psychiatric admission at Backus Hospital in July 2015 (citing R. 3066-68)"; "On November 11, 2015, the plaintiff contacted Yale to report several days of nausea and an

inability to keep food down" (citing R. 3504)).)  She describes that she "continued to pursue treatment for chronic pain through Yale in April 2016[,]" and "[o]n May 9, she received treatment from the Yale emergency department for abdominal pain." (*Id.* (citing R. 3491, 3488-90).)  She also argues that "[t]he Commissioner's own vocational expert testified that excessive absenteeism would prevent an individual from engaging in substantial gainful activity[.]"  (Pl.'s Mem., ECF No. 17-1, at 12 (citing R. 69).)

But even with this cited evidence of the record, there was substantial evidence for the finding that the Plaintiff could work at the light exertional level before June 6, 2019.  Overall, as the ALJ observed, "the record does not contain any consistent clinical deficits of musculoskeletal strength, ranges of motion, or significant limitations in standing or walking abilities." (R. 21.)  In review of the Plaintiff's subjective complaints, she testified that "she has a history of finger locking and reduced handling and fingering abilities, [but] the record shows that the claimant began reporting that her fingers were getting stuck in November 2020, well after the date last insured and established onset date." (*Id.* (citing R. 3988, 4090).)  And "[a] review of the medical record revealed only limited medical treatment prior to the date last insured[,]" including August 2014 imaging of the Plaintiff's right ankle, February and April 2015 podiatry appointments, and an orthotics referral which led to a conservative course of treatment. (R. 19 (citing R. 2005, 785, 776).)  In February 2016, the Plaintiff saw rheumatologist Fotios Koumpouras, M.D., who opined that she exhibited musculoskeletal tenderness on physical examination, but that she had normal ranges of motion reflexes, and muscle tone. (R. 726-29.)  At a June 2016 appointment for pain management, she reported that she was "doing well with her current medication regimen [of Oxycodone 10 mg] during the day[,]" but that "[s]he has flare ups of pain during the night time." (R. 3486.)  She did overall "report decrease in pain and increase in function with the use of opiate

medications." (*Id.*)  An August 20, 2016 report from Dr. Chowdhary observed that "[s]he has been having some achiness in different joints of the body[.]"  (R. 3432.)  However, Dr. Chowdhary opined that "she had limited sarcoidosis in the chest from which is improved and is doing well and last CAT scan showed significant resolution of the adenopathy . . . and I do not think [sic] she needs any more DMARDS (disease-modifying antirheumatic drugs)."  (R. 3435.)  In addition, the Plaintiff's reported activities of daily living ("ADLs") include that "she had been more active and busy with her boyfriend's kids, and was able to perform ADLs and household chores" in June 2016, and although she had "intermittent swelling of the knuckles and general fatigue, . . . it did not interfere with ADLs" in December 2017.  (R. 20 (citing R. 3486, 1005).)

As such, the ALJ's "RFC findings were based on relevant evidence that a reasonable mind might accept as adequate to support the conclusion that Plaintiff could perform a range of simple light work."  (Def.'s Mem., ECF No. 19-1, at 14 (citing *Johnson v. Colvin,* 669 F. App'x 44, 46 (2d Cir. 2016) (summary order) ("finding that 'because the record contained sufficient other evidence supporting the ALJ's determination and because the ALJ weighed all of that evidence when making his RFC finding, there was no gap in the record and the ALJ did not rely on his own lay opinion" (internal quotations omitted)).)  The record demonstrates "ongoing treatment for multiple medical impairments[,]" and therefore, the ALJ accepted "that the claimant has some physical limitations, and the assessed [RFC] has the finding for light work with additional postural and environmental restrictions."  (R. 20-21.)

There was also substantial evidence for finding that the Plaintiff's mental impairments were adequately addressed by limiting her to routine tasks in a non-public work setting.  Medical records pertaining to her mental status reveal that "although [she] has had ongoing mental health treatment, there are no clinical findings for loss of cognition, memory, or concentration such that claimant

could not perform at least simple and routine work tasks." (R. 22.) Rather, therapy treatment notes from Mr. Stavis throughout 2013 showed that she was "consistently . . . within normal limits in all mental status findings, including mood, affect, thought process, and orientation." (R. 21 (citing R. 1496-1544).) And "records during this period predominately and consistently revealed intact mental status findings[,]" even including "the claimant's hospital admission in July 2015, [where] the psychiatric evaluation noted that she was of at least average intelligence with no acute cognitive or memory deficit." (*Id.* (citing R. 3061).) A July 2018 letter from Mr. Stavis indicated that she has been "engaged with treatment since February 2015 at HealThy Soul Clinical Services for anxiety, depression, and PTSD experiences." (*Id.* (citing R. 1439).) Then in September 2018, she began psychiatric treatment at Oceanside Recovery for PTSD and depression, where treatment notes indicate that she "began experience[ing] more crying and social phobia symptoms one week earlier," and "[t]he mental status examination noted extremely anxious mood, but good insight, judgment, attention/concentration, appropriate thought content, and intact memory." (*Id.* (citing R. 3913).) Progress notes from 2019 and 2020 showed that she "consistently reported similar intact mental status examination findings[,]" and that "during a January 2021 appointment, [she] reported increased anxiety due to the pandemic, but also stated that she walks and has been cooking more." (R. 22 (citing R. 2706-18, 4050-83, 4090).) Therefore, the ALJ appropriately included limitations in her RFC "to few workplace changes and no social interaction with the public with only occasional interaction with coworkers and supervisors" in order "[t]o accommodate the claimant's complaints of severe social anxiety and panic attacks[.]" (*Id.*)

Notably, in the ALJ's evaluation of both the Plaintiff's physical and mental medical impairments, she considered the Plaintiff's subjective complaints in light of the other evidence in the record in evaluating her RFC. "While the ALJ was obliged to consider the Plaintiff's subjective

complaints when formulating the RFC, she was not required to accept the claimant's subjective complaints without question; she may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Stonick*, 2020 WL 6129339, at *14 (internal quotation marks and brackets omitted) (citing *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)).  To be sure, an ALJ "may not reject a claimant's subjective opinion regarding the intensity and persistence" of her symptoms "solely because the available objective medical evidence does not substantiate . . . her statements." *Gonzalez v. Berryhill*, No. 3:18-cv-00241 (SRU), 2020 WL 1452610, at *12 (D. Conn. Mar. 25, 2020) (quoting 20 C.F.R. § 416.929(c)(2)) (alteration omitted); *see also* 20 C.F.R. § 404.1529(c)(2).  If there is a conflict between the objective evidence and the claimant's testimony, "the ALJ 'must consider the other evidence,'" including "(1) the claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; (5) treatment, other than medication, received for pain relief; (6) measures taken to relieve pain and other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms." *Gonzalez*, 2020 WL 1452610, at *12 (quoting 20 C.F.R. § 416.929(c)(3)) (alteration omitted); *see also* 20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ appropriately discussed the relevant evidence, including the Plaintiff's ADLs and medical evidence as noted above.  (R. 18-22.)  Further consideration of her ADLs included a statement that "on good days she is able to perform some household chores such as cooking, dusting, and laundry for about one and a half hours throughout the day."  (R. 18-19.)  Overall, the ALJ found that for the period of January 31, 2014 through June 6, 2019, her RFC assessment is "supported by the claimant's testimony and written statements in connection with

the clinical facts, medical findings, and medical opinions." (R. 24.) As noted, the Court concludes that the record evidence supports this conclusion.

As such, the ALJ's decision must be upheld, as substantial evidence supported her decision. *See Johnson*, 563 F. Supp. 2d at 454. Merely disagreeing with the ALJ's findings does not warrant remand. *See Traci R. o/b/o E.A.O.B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-607 (DNH) (TWD), 2022 WL 4354367, at *6 (N.D.N.Y. Sept. 20, 2022), *report and recommendation adopted sub nom. Traci May R. on behalf of E.A.O.B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-607, 2022 WL 12318225 (N.D.N.Y. Oct. 20, 2022) ("Under the substantial evidence standard of review, it is not enough for [p]laintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position[,]" as "substantial evidence means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" (internal quotation marks and citation omitted)).

## IV. CONCLUSION

For the reasons stated above, the Court concludes that the ALJ's decision was supported by substantial evidence and free of legal error. Therefore, the Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 17) is **DENIED**. The Commissioner's Motion for an Order to Affirm the Decision (ECF No. 19) is **GRANTED**.

This is not a recommended ruling. The parties consented to the jurisdiction of the undersigned Magistrate Judge, who may therefore direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. (ECF No. 14.) Appeals may be made directly to the appropriate United States Court of Appeals. *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c). The Clerk of the Court is respectfully directed to enter judgment in favor of the Defendant, and to close this case.

So ordered this 23rd day of March 2023, at Hartford, Connecticut.


*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge